UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CAMP 1 TRUCKEE LLC, a California limited liability company,

Plaintiff,

v.

DAXKO, LLC, an Alabama limited liability company and DOES 1–20, inclusive,

Defendants.

No. 2:21-cv-02064-MCE-JDP

**MEMORANDUM AND ORDER**

On October 6, 2021, Plaintiff Camp 1 Truckee LLC ("Plaintiff") initiated the present lawsuit against Defendant Daxko, LLC ("Defendant") in the Superior Court of California, County of Nevada. Ex. 1, Not. Removal, ECF No. 1-1, at 3–19. Defendant removed the action to this Court on November 8, 2021, on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Not. Removal, ECF No. 1. Presently before the Court are two motions: (1) Defendant's Motion to Compel Arbitration, ECF No. 5, and (2) Plaintiff's Motion to Stay Arbitration, ECF No. 7. For the reasons set forth below, Defendant's Motion is GRANTED, and Plaintiff's Motion is DENIED.[1]

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered these matters submitted on the briefs. See E.D. Local Rule 230(g). As such, Plaintiff's Request for Oral Argument, ECF No. 17, is DENIED.

1

# BACKGROUND[2]

According to the Complaint, Plaintiff manages a fitness and wellness facility named Camp 1 Fitness in Truckee, California, with Katherine Mancuso as its sole limited liability company member and manager.  To facilitate its operations, Plaintiff intended to utilize a gym website and scheduling software that would allow its customers to schedule and pay for classes and memberships by credit card by selecting the services and payment options directly on the website.  Defendant, an Alabama limited liability company who does business as "Club Automation," sells management software and related products.

In the spring of 2020, Club Automation contacted Plaintiff on numerous occasions and visited Plaintiff in Truckee to solicit its gym membership services.  On June 29, 2020, Club Automation allegedly sent Plaintiff for the first time through PandaDoc.com (a document platform service) a document titled "Club Automation Order Form" ("Order Form"), which documented the software management services to be provided to Plaintiff.  See Ex. 1, Def.'s Mot. Compel Arbitration, ECF No. 5-1; but see Ex. A, Ingram Decl., ECF No. 11-2, at 5 (email from Defendant's representative dated June 26, 2020, stating that "[a]ttached is the contract to review" and that she "will also send over a digital signature format as well via Panda Doc.").  The Order Form stated that it was valid until June 30, and that "this Agreement shall be effective as of the date of the last of the authorized representatives of the parties to sign below . . ."  Ex. 1, Def.'s Mot. Compel Arbitration, ECF No. 5-1, at 2.  Included in the Order Form are the following relevant provisions:

///
///
///

---

[2] Unless otherwise noted, the following facts are taken, sometimes verbatim, from Plaintiff's Complaint.  See generally Ex. 1, Not. Removal, ECF No. 1-1, at 3–19.

> 6. ADDITIONAL TERMS
>
> . . .
>
> 2. **Incorporation of Online Terms and Conditions.**  This Agreement specifically includes and expressly incorporates by reference online terms and conditions (the "Terms and Conditions") found at www.clubautomation.com/terms, and the terms and conditions listed in Exhibit B, and also including all terms and conditions incorporated by reference therein. Customer acknowledges that Customer has reviewed the Terms and Conditions and agrees that the Terms and Conditions are an essential part of this Agreement.
>
> . . .
>
> 5. **Governing Law/Arbitration.**  The parties agree that all disputes shall be resolved in accordance with the arbitration provision contained in the Terms and Conditions, found at www.clubautomation.com/terms.

Id. at 7.  Paragraph 18(h) of the referenced terms and conditions ("June 2020 Terms and Conditions") provides, in part, the following:

> **18 GENERAL PROVISIONS**
>
> . . .
>
> (h) Governing Law; Arbitration.  This Agreement and the relationship between Customer and COMPANY shall be governed by the laws of the State of Alabama, without regard to its conflict of law provisions.  Any claim or dispute arising out of this Agreement, unless otherwise excluded below, shall be determined exclusively by binding arbitration to take place in Jefferson County in the State of Alabama.  Such arbitration shall be conducted in accordance with the American Arbitration Association rules and before an American Arbitration Association certified Arbitrator.
>
> . . .
>
> Notwithstanding the foregoing, the following claims and disputes ("Excluded Disputes") are not subject to binding arbitration:  (1) any non-equitable claims or disputes in which COMPANY is seeking to collect past-due amounts under the Agreement with an amount in controversy less than $75,000 and (2) any claim for a temporary restraining order, injunction, specific performance and/or any other equitable relief. . . .

Ex. 2, Def.'s Mot. Compel Arbitration, ECF No. 5-2, at 11–12.

///

At that time, Plaintiff states that Club Automation explained that the services would be provided at a substantial discount if the Order Form was immediately signed by Plaintiff. However, Club Automation allegedly did not explain at that time or any other time that there were other contractual terms that were not expressly stated in the Order Form itself, including the arbitration provision that required all disputes to be arbitrated in Alabama. See Mancuso Decl., ECF No. 10-2 ¶ 11 ("The Order Form that was provided to me on June 29, 2020 also contained no working link to access the purported terms and conditions because the Order Form was sent to me via" PandaDoc.). Furthermore, according to Plaintiff, the Order Form was not signed by both parties prior to June 30 and thus it expired. See Ex. 1, Def.'s Mot. Compel Arbitration, ECF No. 5-1, at 16, 18 (showing Ms. Mancuso's signature dated June 30, 2020, and Defendant representative's signature dated July 1, 2020).

According to Plaintiff, Club Automation's product was substandard and inadequate and did not come close to meeting the level of services that Club Automation represented. Plaintiff notified Club Automation of the various ongoing issues with the software and credit card processing between August and September 2020, but Club Automation never resolved any of the outstanding issues. In October 2020, Plaintiff "gave notice to Club Automation of [Plaintiff's] termination of any agreement to the extent an enforceable agreement existed." Mancuso Decl., ECF No. 10-2 ¶ 15.

On July 26, 2021, Club Automation filed a Demand for Arbitration and Statement of Claims ("Demand") with the American Arbitration Association ("AAA") against Plaintiff, asserting a single cause of action for breach of contract. See Ex. 3, Def.'s Mot. Compel Arbitration, ECF No. 5-3. In its Demand, Club Automation stated that the arbitration should take place in Jefferson County, Alabama, the location of its headquarters. Id. at 5 ¶ 5. Club Automation further alleged that the parties are subject not only to the "Governing Law/Arbitration" provision in the Order Form but also to an arbitration provision found in its updated terms and conditions entitled "Master Service Agreement," which Defendant says was incorporated into the Order Form. See generally id. at 31–66

(listing URL as www.clubautomation.com/master-service-agreement).  The Master Service Agreement, which took effect in April 2021, provides, in relevant part, the following:

> **15. GENERAL**
>
> . . .
>
> c. **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Alabama, excluding the conflicts of law provisions thereof and both parties stipulate to the exclusive jurisdiction of the state and federal courts of that jurisdiction.  The parties agree that any disputes among them arising from or related to this Agreement shall be resolved by binding arbitration conducted under the auspices of the [AAA] in a mutually agreed upon location. . . .

Id. at 50.

In the arbitration before the AAA, Plaintiff objected to said arbitration and the jurisdiction of the AAA on grounds that no enforceable agreement or arbitration clause exists and that the arbitration clause in the Master Service Agreement was not part of the Order Form.  Defendant acknowledged that the Master Service Agreement was not part of the Order Form and for the first time produced the June 2020 Terms and Conditions in an Amended Statement of Claims.

On October 6, 2021, Plaintiff filed a Verified Complaint for declaratory relief, rescission, and preliminary and permanent injunctive relief against Defendant in the Superior Court of California, County of Nevada.  Subsequently, on October 14, 2021, Plaintiff filed a motion to stay arbitration or, in the alternative, motion for preliminary injunction to enjoin the pending arbitration, in part, on grounds that the arbitration provision is unenforceable and unconscionable.  See Ex. 1, Not. Removal, ECF No. 1-1, at 57–79.  On October 26, 2021, Defendant notified the AAA by letter that it "consents to [Plaintiff's] request for the AAA to stay further proceedings until the Superior Court of Nevada County, California has determined the appropriate forum." Ex. 2, Brown Decl., ECF No. 7-2, at 143.  The AAA confirmed that the matter would be held in abeyance.  Id. at 145.  Defendant then asked Plaintiff if it would withdraw its motion to stay arbitration,

and Plaintiff responded that it would prepare a stipulation and order to stay the pending arbitration. Id. at 147–50. Plaintiff sent Defendant a proposed stipulation and order to stay and enjoin the arbitration, id. at 152, 156–59, but Defendant instead removed the action to this Court and concurrently filed the present Motion to Compel Arbitration. Shortly thereafter, Plaintiff filed the instant Motion to Stay Arbitration.

## STANDARD

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a party may seek a court order compelling arbitration where another party refuses to arbitrate. Id. § 4. Valid arbitration agreements must be "rigorously enforced." Perry v. Thomas, 482 U.S. 483, 490 (1987). To that end, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original).

"Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state or substantive or procedural policies to the contrary." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). However, "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1713 (2022) (citing Moses H. Cone, 460 U.S. at 24). This policy "is merely an acknowledgement of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." Granite Rock Co. v.

Int'l Broth. of Teamsters, 561 U.S. 287, 302 (2010) (citation and internal quotation marks omitted). In other words, "[t]he policy is to make arbitration agreements as enforceable as other contracts, but not more so." Morgan, 142 S. Ct. at 1713 (citation and internal quotation marks omitted); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24–25 (1991) (stating that the FAA's purpose was . . . to place arbitration agreements upon the same footing as other contracts," and recognizing a "liberal federal policy favoring arbitration agreements"). "[A] court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation." Morgan, 142 S. Ct. at 1713.

Generally, in deciding whether a dispute is subject to an arbitration agreement, a court must answer two questions: (1) "whether a valid agreement to arbitrate exists," and, if so, (2) "whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If a party seeking arbitration establishes these two factors, the court must compel arbitration. 9 U.S.C. § 4; Chiron, 207 F.3d at 1130. Accordingly, the Court's role "is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 478 (9th Cir. 1991).

The Supreme Court has also "recognized that parties can agree to arbitrate gateway questions of arbitrability, such as whether parties have agreed to arbitrate or whether the agreement covers a particular controversy." Rent-A-Ctr., West, Inc. v. Jackson, 561 U.S. 63, 68–69 (2010) (internal quotation marks omitted). If the agreement to arbitrate contains such a delegation provision, the court must compel arbitration with respect to issues of arbitrability except to the extent there is a challenge as to whether the delegation agreement itself is valid. Id.

In determining the existence of an agreement to arbitrate, the district court looks to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046,

7

1049 (9th Cir. 1996). "[A]lthough 'courts may not invalidate arbitration agreements under state laws applicable <u>only</u> to arbitration provisions,' general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." <u>Circuit City Stores, Inc. v. Adams</u>, 279 F.3d 889, 892 (9th Cir. 2002) (quoting <u>Doctors Ass'n, Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996) (emphasis in original)). However, courts cannot apply even generally applicable defenses to contract enforceability, such as unconscionability, in a way that disfavors and undermines arbitration. <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 341–42 (2011). Finally, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." <u>Moses H. Cone</u>, 460 U.S. at 24–25. "An order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363 US. 574, 582–83 (1960).

## ANALYSIS

### A.   Defendant's Motion to Compel Arbitration[3]

Defendant seeks to compel arbitration on grounds that the parties' agreement "delegates authority to the AAA to resolve any claims or disputes arising from the Agreement – including the enforceability and arbitrability of the claims themselves . . . ." Def.'s Mot. Compel Arbitration, ECF No. 5, at 7. Plaintiff counters that there was no clear and unmistakable agreement to delegate the issue of arbitrability to an arbitrator

---

[3] Plaintiff contends that there is no valid and enforceable contract between the parties because the Order Form states that it is "Valid Until: 6/30/20," but the parties did not sign the Order Form until July 1, 2020. <u>See</u> Pl.'s Opp'n Mot. Compel Arbitration, ECF No. 10, at 18–19; Ex. 1, Def.'s Mot. Compel Arbitration, ECF No. 5-1, at 2, 16, 18. However, "[a]s an offeror, [Defendant] had the absolute authority to contract outside of its self-imposed deadline." Def.'s Mot. Compel Arbitration, ECF No. 5, at 10 (citing <u>Jeffrey Kavin, Inc. v. Frye</u>, 204 Cal. App. 4th 35, 44–45 (2012)). As such, Plaintiff's argument is not well-taken.

8

and thus this is an issue for the Court to decide.  Pl.'s Opp'n Mot. Compel Arbitration, ECF No. 10, at 13.  Additionally, Plaintiff argues that the arbitration and delegation provisions are unconscionable, and that Defendant waived its right to arbitrate.  See id. at 17–23.

As stated above, in resolving a motion to compel arbitration, the Court's analysis is limited to (1) "whether a valid agreement to arbitrate exists," and, if so, (2) "whether the agreement encompasses the dispute at issue."  Chiron, 207 F.3d at 1130.  These gateway issues can be expressly delegated to the arbitrator where "the parties clearly and unmistakably provide otherwise."  Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)).  A contracting party may challenge the enforceability of a delegation clause by arguing that the delegation is not "clear and unmistakable" or by raising a state law defense to contract formation.  See Rent-A-Ctr., 561 U.S. at 71.

### 1. Delegating Arbitrability

The clear and unmistakable standard derives from the Supreme Court's interpretation of the FAA, and as such, whether the agreement delegated the question of arbitrability to the arbitrator is informed both by Supreme Court precedent as well as supporting Ninth Circuit authority.  Hart v. Massanari, 266 F.3d 1155, 1171–72 (9th Cir. 2001).  In Brennan v. Opus Bank, 796 F.3d at 1128–34, the Ninth Circuit considered whether incorporating AAA rules constitutes delegating arbitrability to the arbitrator.  There, the plaintiff claimed the arbitration clause in his employment agreement with his employer (the defendant) was unconscionable and thus unenforceable.  Id.  The employment agreement contained two relevant provisions:  (1) the arbitration clause, and (2) the delegation clause which expressly incorporated the AAA rules.  Id. Defendant argued, and the district court agreed, that by expressly incorporating the AAA rules, one of which provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement," the parties clearly and unmistakably delegated the question of arbitrability

1 to the arbitrator. Id. at 1130. The Ninth Circuit upheld the district court's determination of this issue, stating that the "incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." Id.

Like the agreement in Brennan, Paragraph 18(h) of the June 2020 Terms and Conditions has an arbitration provision and a delegation clause incorporating the AAA rules. See Ex. 2, Def.'s Mot. Compel Arbitration, ECF No. 5-2, at 11–12. First, the arbitration provision states that "[a]ny claim or dispute arising out of this Agreement, unless otherwise excluded below, shall be determined exclusively by binding arbitration . . ." Id. at 11. The only claims and disputes excluded from said definition are "(1) any non-equitable claims or disputes in which COMPANY is seeking to collect past-due amounts under the Agreement with an amount in controversy less than $75,000 and (2) any claim for a temporary restraining order, injunction, specific performance and/or any other equitable relief." Id. at 12. Neither of these exclusions have been raised by the parties.

Second, the delegation clause states that "[s]uch arbitration shall be conducted in accordance with the [AAA] rules and before an [AAA] certified arbitrator." Id. As this language unambiguously incorporates by reference the AAA rules, under Brennan—binding Ninth Circuit case law—this clause can be properly described as delegating arbitrability to the arbitrator.[4] 796 F.3d at 1130; see also Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1074 (2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

Despite the above, Plaintiff claims that Ms. Mancuso is an unsophisticated party because she "is a first-time small business owner with no experience entering into gym/fitness/studio contracts or contracts for software management services." Pl.'s

---

[4] Even considering the Master Service Agreement, which states that "any disputes among [the parties] arising from or related to this Agreement shall be resolved by binding arbitration conducted under the auspices of the [AAA]," Ex. 3, Def.'s Mot. Compel Arbitration, ECF No. 5-3, at 50 (emphasis added), the result remains the same in that this clause incorporates the AAA rules and thus clearly and unmistakably delegates arbitrability to the arbitrator. See Brennan, 796 F.3d at 1130.

Opp'n Mot. Compel Arbitration, ECF No. 10, at 16 (further stating that Ms. Mancuso "does not have any education, legal experience, or training with regard to business contracts."); see also Mancuso Decl., ECF No. 10-2 ¶ 10.  According to Plaintiff, "the Brennan court's ruling was expressly limited to sophisticated parties and does not apply to an inexperienced individual, untrained in the law, like Ms. Mancuso." Pl.'s Opp'n Mot. Compel Arbitration, ECF No. 10, at 15.  It is true that the court in Brennan "limit[ed] [its] holding to the facts of the present case, which [did] involve an arbitration agreement 'between sophisticated parties.'" 796 F.3d at 1131 (citation omitted).  However, the court noted the following:

> Our holding today should not be interpreted to require that the contracting parties be sophisticated . . . before a court may conclude that incorporation of the AAA rules constitutes "clear and unmistakable" evidence of the parties' intent.  Thus, our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties . . .  Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties . . .

Id. at 1130–31; see also McLellan v. Fitbit, Inc., No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) ("The greater weight of authority has concluded that that the holding of [Brennan] applies similarly to non-sophisticated parties.") (citations omitted).

Even if the Brennan holding is so limited, the Court is not persuaded that Ms. Mancuso is an unsophisticated party.  According to evidence submitted by Defendant, Ms. Mancuso is a commercial real estate broker dealing with multi-million-dollar properties and has served as chief financial officer for a development corporation for 21 years.  See Exs. B–C, Ingram Decl., ECF No. 11-2, at 6–10 (screenshots of webpages from Mancuso Real Properties and LinkedIn).  Such experience negates any reasonable notion that Ms. Mancuso is an unsophisticated or inexperienced party who could not reasonably understand the arbitration provision or delegation clause at issue.

///

Thus, the Court finds that the parties clearly and unmistakably intended to arbitrate arbitrability.

### 2. State Law Contract Defense

As the arbitration clause clearly and unmistakably delegates arbitrability, before the federal court can intervene, the plaintiff must challenge the specific agreement to arbitrate via a state law defense to contract formation. Rent-A-Ctr., 561 U.S. at 72–74; see also Brennan, 796 F.3d at 1132 ("Because a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement to delegate arbitrability—the Delegation Provision—is itself unconscionable.") (emphasis in original). In Brennan, the plaintiff challenged the arbitration clause as unconscionable, yet because they failed to specifically challenge the delegation provision, or the agreement to arbitrate arbitrability, the court found that Rent-A-Center dictated against reviewing that provision. Id. at 1133–34.

Here, Plaintiff argues that the intertwined arbitration provision and delegation clause are unconscionable. See Pl.'s Opp'n Mot. Compel Arbitration, ECF No. 10, at 19–23. However, there is a question as to whether Alabama or California law controls the unconscionability analysis given that the June 2020 Terms and Conditions contain a choice-of-law provision: "This Agreement and the relationship between Customer and COMPANY shall be governed by the laws of the State of Alabama, without regard to its conflict of law provisions." Ex. 2, Def.'s Mot. Compel Arbitration, ECF No. 5-2, at 11; see also Ex. 3, Def.'s Mot. Compel Arbitration, ECF No. 5-3, at 50 (Master Service Agreement) (same). As this Court sits in California, it must analyze this choice-of-law issue in accord with California's choice-of-law rules. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002).

"California courts . . . apply the principles set forth in Restatement [(Second) of Conflict of Laws] Section 187, which reflects a strong policy favoring enforcement of such provisions." Nedlloyd Lines B.V. v. Superior Ct., 3 Cal. 4th 459, 464–65 (1992).

California courts will enforce a choice-of-law clause in a contract in favor of another jurisdiction's law if there is: (1) a substantial relationship between the contract and the chosen state or some other reasonable basis for the selection of the foreign state's law; and (2) no conflict with a fundamental policy of California law. See, e.g., Eugene N. Gordon, Inc. v. La-Z-Boy, Inc., No. 2:06-cv-02353-MCE-DAD, 2007 WL 1101456, at *2 (E.D. Cal. Apr. 12, 2007) (citing Nedlloyd Lines, 3 Cal. 4th at 465).

Alabama law is similar to California law in that, "[t]o avoid an arbitration provision on the ground of unconscionability, the party objecting to arbitration must show both procedural and substantive unconscionability." Compare SCI Ala. Funeral Servs., LLC v. Hinton, 260 So. 3d 34, 38 (Ala. 2018) (quoted) (emphasis in original), with Sonic-Calabasas A, Inc. v. Moreno, 57 Cal. 4th 1109, 1133 (2013) (stating that "the doctrine of unconscionability has both a procedural and substantive element"). Under California law, both elements do not need to be present in the same degree. A sliding scale approach is invoked, where a greater showing of one element requires less of a showing of the other. Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000). Regardless of whether Alabama or California law applies, the parties agree that the result is the same. See Pl.'s Opp'n Mot. Compel Arbitration, ECF No. 10, at 14 n.5; Def.'s Reply ISO Mot. Compel Arbitration, ECF No. 20, at 2 n.2. With that said, the Court will first address procedural unconscionability, then substantive unconscionability.

### a. Procedural Unconscionability

Procedural unconscionability focuses on the manner in which the contract was negotiated by the parties, and specifically focuses on factors of oppression and surprise. Kinney v. United HealthCare Servs., Inc., 70 Cal. App. 4th 1322, 1329 (1999) (explaining that oppression arises from an inequality of bargaining power devoid of any real negotiations, and surprise relates to whether or not the terms of the contract are hidden by using excess text in contract) (citations omitted); see also Hinton, 260 So. 3d at 39 (stating that "whether a party had 'overwhelming bargaining power' corresponds to procedural unconscionability."). Here, Plaintiff asserts that "the Order Form (with the

13

Unincorporated [June 2020] Terms [and Conditions]) is exactly the type of contract of adhesion for which procedural unconscionability takes its form" because Ms. Mancuso was only given 24 hours to accept or reject the Order Form or risk losing substantial discounts offered. Pl.'s Opp'n Mot. Compel Arbitration, ECF No. 10, at 23. A contract of adhesion is a "standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 853 (2001); see Moule v. United Parcel Serv. Co., No. 1:16-cv-00102-JLT, 2016 WL 3648961, at *6 (E.D. Cal. July 7, 2016) (finding the oppression element satisfied because the terms at issue "were offered on a 'take it or leave it' basis—giving users the option to either accept the [] Terms or find another shipping service."). At first glance, the Agreement appears to be one of adhesion—accept the contract in full or lose substantial discounts, especially if Plaintiff was only given 24 hours to decide. However, there are other factors that diminish the adhesive nature of the Agreement.

Regarding the 24-hour time frame, there is evidence demonstrating that Defendant actually sent Ms. Mancuso the Order Form on June 26, 2020, five days before the June 30 acceptance date, and that Ms. Mancuso did in fact receive the proposed contract beforehand as evidenced by her email dated June 28, 2020, asking Defendant "to walk [her] through the contract" in the next day or two. See Ex. A, Ingram Decl., ECF No. 11-2, at 5 (emails exchanged June 26 and 28, 2020). Plaintiff nevertheless contends that "the arbitration provision and purported delegation clause in this case were not even contained within the Order Form" and that Defendant "never explained or provided to Ms. Mancuso . . . the additional terms and conditions that [Plaintiff] would be subject to outside of the Order Form." Pl.'s Opp'n Mot. Compel Arbitration, ECF No. 10, at 23. However, a short URL was listed in the Order Form and Ms. Mancuso could have easily entered it into an internet search bar to pull up the Terms and Conditions if unable to click on the hyperlink. See Ex. 1, Def.'s Mot. Compel Arbitration, ECF No. 5-1, at 7 ("The parties agree that all disputes shall be resolved in

14

accordance with the arbitration provision contained in the Terms and Conditions, found at www.clubautomation.com/terms."). Plaintiff "cannot avoid the terms of a contract by asserting a representative failed to read the [Terms and Conditions] when provided with an opportunity to do so, or that [she] does not recall receiving notice of the [Terms and Conditions]." Moule, 2016 WL 3648961, at *7. Overall, the Court finds that Plaintiff may have, at most, established a minimal degree of procedural unconscionability.

### b.   Substantive Unconscionability

The substantive element of unconscionability hinges on the "terms of the agreement and whether those terms are so one-sided as to shock the conscience." Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1172 (9th Cir. 2003) (citing Kinney, 70 Cal. App. 4th at 1330); see also Hinton, 260 So. 3d at 39 ("Whether the terms of the arbitration provision are 'grossly favorable to a party' corresponds to substantive unconscionability . . ."). Plaintiff argues that "the delegation clause is unconscionable because pursuant to AAA Rule 7, the arbitrability issue can be decided as part of the final award." Pl.'s Opp'n Mot. Compel Arbitration, ECF No. 10, at 21. Rule 7 of the Commercial Arbitration Rules states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim[,]" and that the arbitrator may rule on any objections "to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim . . . as a preliminary matter or as part of the final award." R-7, Commercial Arbitration Rules and Mediation Procedures, AAA, available at https://www.adr.org/sites/default/files/Commercial Rules_Web-Final.pdf (last visited Aug. 1, 2022). To the extent Plaintiff claims Rule 7 is per se objectionable, said rule has been well-established, and Plaintiff does not point to any authority raising doubt as to its propriety.

Similarly, Plaintiff argues that the forum selection clause in the June 2020 Terms and Conditions, which requires arbitration to take place in Jefferson County, Alabama, is substantively unconscionable because it "forc[es] a California resident to pay upfront

fees and to travel thousands of miles to resolve disputes in Alabama, where Club Automation's headquarters, not [Plaintiff], are located." See Pl.'s Opp'n Mot. Compel Arbitration, ECF No. 10, at 20–21; Ex. 2, Def.'s Mot. Compel Arbitration, ECF No. 5-2, at 11.  Under both Alabama and California law, forum selection clauses are not per se unconscionable.  See Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So. 2d 1129, 1132–33 (Ala. 2003) (stating that it is the "well-established law of Alabama that forum-selection clauses will be enforced so long as they are not unfair or unreasonable under the circumstances."); Smith, Valentino & Smith, Inc. v. Superior Ct., 17 Cal. 3d 491, 496 (1976) (concluding "that forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable.").  Plaintiff's argument hinges on the inconvenience and additional expenses of arbitrating claims in Alabama but even if such factors "were relevant to the enforceability of the forum selection clause, Plaintiff's argument is not 'specific to the delegation provision' . . . " Gountoumas v. Giaran, No. CV 18-7720-JFW (PJWx), 2018 WL 6930761, at *11 (C.D. Cal. Nov. 21, 2018) (citing Rent-A-Ctr., 561 U.S. at 73).  "Plaintiff fails [to] demonstrate that [it] would be required to travel to [Alabama] to litigate the limited issue of arbitrability or that [it] would incur prohibitive expenses to litigate this limited issue in [Alabama]."  Id.  This is especially true given that under the Master Service Agreement, which according to Defendant has the governing arbitration provision, the language has been modified to require the parties to resolve disputes by binding arbitration "in a mutually agreed upon location," thus removing the Alabama locale.[5]  Ex. 3, Def.'s Mot. Compel Arbitration, ECF No. 5-3, at 50.  Ultimately, Plaintiff has failed to demonstrate that the delegation provision is substantively unconscionable.  Because both forms of unconscionability are required under either

---

[5] Plaintiff also takes issue with the June 2020 Terms and Conditions "requiring the appointment and payment to multiple arbitrators to attempt to select a third arbitrator, and if the arbitrators cannot agree, the parties are forced to file an action in the circuit court in Jefferson County, Alabama, to appoint the arbitrator . . ." in the event that the parties cannot agree on an arbitrator.  Pl.'s Opp'n Mot. Compel Arbitration, ECF No. 10, at 21; see Ex. 2, Def.'s Mot. Compel Arbitration, ECF No. 5-2, at 12.  However, this language does not appear in the Master Service Agreement.  See Ex. 3, Def.'s Mot. Compel Arbitration, ECF No. 5-3, at 50.

Alabama or California law, the Court finds that the delegation clause at issue is not unconscionable.

### 3. Waiver of Right to Compel Arbitration

Lastly, Plaintiff contends that "Defendant waived its right to compel arbitration on the instant issues after it consented to have the Court adjudicate the issue of arbitrability." Pl.'s Opp'n Mot. Compel Arbitration, ECF No. 10, at 18. "[W]here the waiver of the right to compel arbitration implicates questions of arbitrability that 'affect the allocation of power' between a court and arbitrator, [courts] have applied a federal law standard for determining whether an arbitration agreement has been waived." Newirth by and through Newirth v. Aegis Senior Cmtys., LLC, 931 F.3d 935, 940 (9th Cir. 2019).

"The right to arbitration, like other contractual rights, can be waived." Martin v. Yasuda, 829 F.3d 1118, 1124 (9th Cir. 2016) (citation omitted). "Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986). At the time Defendant filed the instant Motion to Compel Arbitration, the law in the Ninth Circuit required a "party seeking to prove waiver of a right to arbitration [to] demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." See, e.g., Martin, 829 F.3d at 1124 (citing Fisher, 791 F.2d at 694). However, the Supreme Court recently held that a showing of prejudice is not required, and that the waiver inquiry should focus on the waiving party's conduct, i.e., did the waiving party "knowingly relinquish the right to arbitrate by acting inconsistently with that right?" Morgan, 142 S. Ct. at 1714.

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate; rather, we consider the totality of the parties' actions." Newirth, 931 F.3d at 941 (internal citations and quotation marks omitted). "Applying this holistic approach, we have generally asked whether a party's actions

17

'indicate a conscious decision . . . to seek judicial judgment on the merits of [the] arbitrable claims, which would be inconsistent with a right to arbitrate.'" Id. (citing Martin, 829 F.3d at 1125) (alterations in original).

Plaintiff argues that "Defendant acted inconsistent[ly] with its right to compel arbitration when it sent correspondence to AAA consenting to the Nevada County Superior Court adjudicating the issue of arbitrability." Pl.'s Opp'n Mot. Compel Arbitration, ECF No. 10, at 17–18; see Ex. 2, Brown Decl., ECF No. 7-2, at 143 (stating Defendant "consents to [Plaintiff's] request for the AAA to stay further proceedings until the Superior Court of Nevada County, California has determined the appropriate forum."). However, that correspondence does not, on its own, convey any intent on the part of Defendant to litigate the merits of the arbitrable claims in court. Defendant has not filed any substantive motions or actively litigated this case for a prolonged period of time. See, e.g., Newirth, 931 F.3d at 942 (finding defendant took actions inconsistent with its right to compel arbitration, in part, by withdrawing its motion to compel arbitration, filing a motion to dismiss plaintiff's arbitrable claims, and refiling the motion to compel arbitration after receiving an adverse ruling on the motion to dismiss). Indeed, on the same day it removed the case to this Court, Defendant filed the present Motion to Compel Arbitration. There is nothing in the present record to show that Defendant has acted inconsistently with exercising its right to compel arbitration. Therefore, the Court finds that Defendant has not waived its right to compel arbitration. In light of all the foregoing reasons, Defendant's Motion to Compel Arbitration is GRANTED.[6]

### B.     Dismiss or Stay the Proceedings

Should the Court grant its Motion to Compel Arbitration, Defendant further asks the Court to "dismiss or stay this action in the interim." Def.'s Mot. Compel Arbitration, ECF No. 5, at 12. A district court has discretion to either stay the case pending arbitration or to dismiss the case if all of the alleged claims are subject to arbitration. Delgadillo v. James McKaone Enterprises, Inc., No. 1:12-cv-01149 AWI MJS, 2012 WL

---

[6] As such, Plaintiff's Motion to Stay Arbitration is DENIED as moot.

4027019, at *3 (E.D. Cal. Sept. 12, 2012). As the parties agreed to arbitrate arbitrability, it is entirely possible that the arbitrator will either resolve the dispute between the parties or find that the arbitration clause does not cover the dispute. "Consequently, in the Court's view, it would be unwise to dismiss the Complaint altogether. Instead a stay pending completion of the arbitration proceedings one way or the other is the more prudent option." Abaya v. Total Account Recovery, LLC, No. 2:15-cv-01269-MCE-CKD, 2016 WL 3407783, at *3 (E.D. Cal. June 20, 2016).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration, ECF No. 5, is GRANTED, and Plaintiff's Motion to Stay Arbitration, ECF No. 7, is DENIED as moot. Plaintiff's Request for Oral Argument, ECF No. 17, is also DENIED. This action is STAYED pending the completion of arbitration in this matter. Not later than ninety (90) days from the issuance of this Memorandum and Order, and every ninety (90) days hereafter until the stay is lifted, the parties shall file a written joint status report as to the status of the arbitration proceedings.

IT IS SO ORDERED.

Dated: August 9, 2022

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE